"persons who shall not traffic in liquors." Section 24 enumerates places "in which traffic in liquor shall not be permitted." Section 30 enumerates "persons to whom liquor shall not be sold or given." Section 31 prohibits the sale of liquor except under the license and terms and conditions specified in the act, and then makes it unlawful to sell, offer, or expose for sale, or give away, any liquor on Sunday, within specified hours, on specified days, within certain places, and within certain other places, and adulterated liquors, and to certain persons. Thus, the various methods of trafficking in liquor are catalogued,—those which are permissible, if licensed, as well as those which are absolutely forbidden, and those whose permissibility or prohibition depends upon time, place, circumstance, or persons. Then follows subdivision G, upon which this indictment is based. This is not a specification of some kind of traffic in liquor, like the previous provisions and like some following it, but a regulation of the place or room or rooms where "the liquors are sold or kept for sale during the hours when the sale of liquors is forbidden." Manifestly, it was the intent of the legislature to punish, not only the prohibited traffic in liquors, but in addition, and as an aid to the suppression of such prohibited traffic, to prohibit certain acts which would, if permitted, lead to the violation of the prohibition of the traffic itself; somewhat in the nature of acts prohibiting the carrying of concealed weapons,—the carrying is no offense per se, but, if not carried, the weapons will not so often become the means of offense. The keeping of the door of a saloon open or unlocked opens the door to the traffic, but is not the traffic itself. The opportunity for offense is prohibited, in order to make the prohibition of the offense itself more effective. It may or may not be intended as an offer to traffic, and therefore we cannot, in a criminal case, in the absence of further statement, hold that it is a charge of an offer to traffic in liquors or to sell them. The punishment of the unlawful traffic is, as a general rule, specified,—perhaps it is in all cases, we are not now called upon to look for omitted cases, —and prosecution by indictment is prescribed. The punishment of the particular collateral offense specified in subdivision G of section 31 is not particularly prescribed, and therefore it is one of the misdemeanors mentioned in subdivision 5 of section 34, and hence within the exclusive jurisdiction of courts of special sessions, as provided in subdivision 2 of section 35.

The judgment of the county court is affirmed. All concur.

---

(27 Misc. Rep. 540.)

WEINTRAUB et al. v. METROPOLITAN LIFE INS. CO.

(Supreme Court, Appellate Term. May 24, 1899.)

1. ACTION BY INFANTS—GUARDIAN AD LITEM—LIABILITY FOR COSTS.
   Failure of a guardian ad litem to file written consent to be responsible for costs, as required by Laws 1882, c. 410, § 1295 (Consolidation Act), is ground for a dismissal of action in the municipal court.

2. LIFE INSURANCE—FORFEITURE—STATEMENTS AS TO HEALTH OF INSURED.
   A life policy provided that it should be void if, before its issuance, insured had been attended by a physician for any serious complaint, or if he had been afflicted with any disease of the kidneys. Insured died within two

years after its issuance, and a statement of the physician attending him in his last illness declared that insured had been afflicted with renal . colic, but not within two years. There was evidence that insured had undergone an operation for gallstone about three years before his death. *Held,* that a recovery on the policy was not supported.

Appeal from municipal court, borough of Manhattan, Fifth district.

Action by Bernhard Weintraub and another, by their guardian ad litem, against the Metropolitan Life Insurance Company. There was a judgment for plaintiffs, and defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVEN-TRITT, JJ.

Ritch, Woodford, Bovee & Wallace, for appellant.
Louis Diamant, for respondents.

MacLEAN, J. Two issues, among others, were raised by the pleadings,—the legal capacity of the plaintiffs to bring the action, and the validity of the policy from the outset.

It was alleged in the complaint, and denied in the answer, that the plaintiffs were infants, and that Louis Diamant, above named, was duly appointed their guardian ad litem. No proof was offered to sustain this allegation. At the opening of the case, counsel for the defendant moved for the dismissal of the complaint because the appointment of the guardian ad litem was irregular, in that the person apparently appointed had not signed and filed a consent to be responsible for costs. This objection is a substantial one. Consol. Act, § 1295 (Laws 1882, c. 410). In a court of record it would have been obviated by due permission to sue as a poor person, but section 469, Code Civ. Proc., as amended, is not applicable to proceedings in the municipal court, although other provisions relating to parties prosecuting and defending as poor persons have been made so. Id. § 3347, subd. 3.

The other ground urged for reversal is even more serious. The policy upon which the action is brought, and which was introduced in evidence on behalf of the plaintiffs, provided that the same should be void if the assured, before its date, had been attended by a physician for any serious disease or complaint, or had had, before that date, any disease of the kidneys. The policy was issued on October 5, 1896. A statement of the attending physician, introduced in evidence on behalf of the plaintiffs, without reference to or reservation of any particular part, declared that the deceased had been afflicted with renal colic, but not for two years next preceding his death, on July 27, 1898. Furthermore, the "statement of claimant," dated July 28, 1898, presented to the company as part of the proof of death, recites that the deceased had an operation for gallstone in Lebanon Hospital about three years before. This was corroborated by the testimony of the superintendent of the hospital that the deceased was an inmate thereof in June, 1896. The evidence introduced by the plaintiffs, or furnished by them, that the assured had been attended by a physician for a serious disease before the date of his policy, requires the reversal of this judgment. It is not a hardship of which the plaintiffs may complain that the policy is invalidated because their father had

had a serious illness before he applied for the policy.    He knew this, and he should have communicated it to the proper officer of the company, and procured a waiver of the condition in the policy.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event.

FREEDMAN, P. J., concurs: LEVENTRITT, J., concurs on the first ground stated.

---

(27 Misc. Rep. 555.)

### GOERL v. DAMRAUER et al.

(Supreme Court, Appellate Term.   May 24, 1899.)

1. LANDLORD AND TENANT—RIGHT OF ENTRY—LEASE—DISPOSSESSION.
    Where, by failure to terminate a prior tenancy, the lessor is unable to give right of entry at commencement of a lease, with covenants of title and quiet enjoyment, the lessee is not bound to accept the premises on a subsequent tender; and hence, not having become a tenant, action to dispossess him will not lie.
2. SAME—TENANT PRO TANTO.
    The fact that right of entry of part of the premises is conferred at the commencement of the lease does not make the lessee a tenant pro tanto.

Appeal from municipal court, borough of Manhattan, First district.

Summary proceedings to dispossess by Martin Goerl against Isidor Damrauer and others.    There was a judgment for plaintiff, and defendants appeal.    Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

Christian G. Moritz, for appellants.
Louis Levy, for respondent.

LEVENTRITT, J.    On the 25th day of August, 1898, the respondent leased to the appellants, in writing, the store floor and basement of the premises No. 189 Spring street, for the term of three years from the 1st day of September, 1898, at the yearly rent of $504, payable in equal monthly installments in advance.    The lease contained the usual covenants.    At the time of its execution one Jacob Shivitz was in possession of the store as a monthly tenant.    Dispossess proceedings were begun against him by the respondent, as landlord, in the month of September, 1897; but, the requisite statutory notice not having been given (Laws 1889, c. 357), the proceedings were necessarily withdrawn, and Shivitz remained in possession throughout that month.    Upon his failure to oust Shivitz, the respondent offered to return to the appellants the rent they had advanced for that month. A proper notice of election to terminate the tenancy having been duly served on Shivitz, requiring him to remove on the 1st day of October, and he having disregarded that notice, summary proceedings were again instituted, and resulted on the 7th of that month in an order awarding possession of the premises to the landlord.    Thereupon the respondent requested the appellants to take possession of the store and basement.    This they refused to do.    Thereafter, and